IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PILLSBURY WINTHROP SHAW PITTMAN LLP, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL NO. 4:09-mc-365 |
| BROWN SIMS, P.C. and INSURANCE COMPANY OF NORTH AMERICA, | § § § | |
| Defendants. | § § | |

## ORDER

Pending before the court[1] are the following motions: Plaintiff Pillsbury Winthrop Shaw Pittman LLP's ("Plaintiff") Motion to Quash Defendant Insurance Company of North America's ("INA") Subpoena (Docket Entry No. 1); INA's Motion to Compel Production (Docket Entry No. 3); and Plaintiff's Motion to Compel Pursuant to Rule 26(b)(5)(B) (Docket Entry No. 32).

The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES IN PART, GRANTS IN PART** Plaintiff's Motion to Quash INA's Subpoena (Docket Entry No. 1); **DENIES IN PART, GRANTS IN PART** INA's Motion to Compel Production (Docket Entry No. 3); and **DENIES IN PART, GRANTS IN PART** Plaintiff's Motion to Compel Pursuant to Rule 26(b)(5) (Docket Entry No. 32).

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 12, 18, and 23.

## I.  Case Background

Plaintiff initiated this miscellaneous action against defendants Brown Sims, P.C., ("Brown Sims") and INA on July 16, 2009, in United States District Court for the Southern District of Texas, Houston Division.[2]  Plaintiff seeks to quash a subpoena for numerous documents issued against it by Brown Sims on behalf of its client INA.[3]  INA counterclaimed for enforcement of and compliance with the subpoena.[4]

The subpoena at issue was served in connection with a lawsuit pending in United States District Court for the Southern District of Florida ("Underlying Action").[5]  The Underlying Action originated when, in October 2005, Hurricane Wilma grounded a 158-foot sailing vessel (the S/Y Legacy) in a National Marine Sanctuary ("Sanctuary"), causing environmental harm to the Sanctuary.[6]  The grounding of the vessel led to a multi-year effort to settle liability claims asserted against INA's insureds and to extract the vessel in a manner that minimized damage to the vessel and the

---

[2]    Plaintiff's Original Complaint for Protective Order and Motion to Quash INA's Subpoena ("Complaint and Motion to Quash"), Docket Entry No. 1.

[3]    Id.

[4]    INA's Answer to Complaint and Motion to Quash, and Original Counterclaim, Docket Entry No. 2, ¶ 14.

[5]    Plaintiff's Reply in Support of Its Motion for Protective Order and Motion to Quash ("Plaintiff's Reply in Support of Its Motion to Quash"), Docket Entry No. 7, p. 2.

[6]    Id. at 3.

Sanctuary.[7]

In 2006, International Yachting Charters, Inc., ("IYC"), which owned the <u>Legacy</u>, retained Plaintiff to assist in negotiating a settlement with the National Oceanic and Atmospheric Administration ("NOAA") to resolve the question of IYC's potential liability for the environmental damage and to obtain the necessary permits to recover the <u>Legacy</u> from her grounded position inside the Sanctuary.[8]  IYC and High Plains Capital ("HPC") later retained Plaintiff to assist with losses to various other vessels, as well.[9]

On October 22, 2008, IYC and Peter Halmos ("Halmos"), president of both IYC and HPC, filed the Underlying Action against INA.[10]  HPC, which owned a damaged vessel named the <u>Mongoose</u>, was later also added to the suit as a plaintiff.[11]  The action stemmed from losses in several different incidents made to and by vessels

---

[7]     <u>Id.</u>; <u>see generally</u> INA's Response to Plaintiff's Motion to Quash and INA's Motion to Compel Production ("INA's Motion to Compel"), Docket Entry No. 3, Ex. A, Peter Halmos, International Yachting Charters, Inc., and High Plains Capital's First Amended Complaint in the United District Court for the Southern District of Florida, ¶¶ 47-105.  The Florida complaint goes into great detail with regard to the Underlying Action, little of which is relevant for purposes of this opinion.

[8]     Complaint and Motion to Quash, Docket Entry No. 1, Declaration of John Easton ("Easton"), ¶ 2.  Easton is an attorney who is a partner with Pillsbury. <u>Id.</u> ¶ 1.

[9]     <u>Id.</u> ¶ 2.

[10]     Complaint and Motion to Quash, Docket Entry No. 1, ¶ 6 and Declaration of Easton, ¶ 3.  The case is styled <u>International Yachting Charters, Inc., et al. v. Insurance Company of North America, et al.</u>, Civil Action No. 08-10084-CIV-Martinez-Brown, Southern District of Florida, Key West Division. Complaint and Motion to Quash, Docket Entry No. 1, ¶ 1.

[11]     INA's Response to Plaintiff's Motion to Quash and INA's Motion to Compel Production, Docket Entry No. 3, p. 3.  No vessels other than the <u>Legacy</u> and the <u>Mongoose</u> are named or discussed with particularity in the filings presently before the court.

owned and operated by IYC and HPC that were covered by at least five insurance policies ("Policy").[12]  Halmos is proceeding pro se in the Underlying Action, while Plaintiff represents the interests of IYC and HPC ("Clients").[13]  Halmos, IYC, and HPC are therein alleging, in part, that INA failed to properly investigate, adjust, and pay on the claims stemming from those losses made to and by the vessels and, as a result, have alleged causes of action including breach of contract, bad faith, negligence, and breach of fiduciary duty.[14]

As part of the claims for damages for which reimbursement is sought from INA through the Policy, a seventy-five-page list of charges from various vendors totaling over fourteen million dollars

---

[12]     Complaint and Motion to Quash, Docket Entry No. 1, ¶ 6 and Declaration of Easton, ¶ 3.  Plaintiff is not clear whether all of the mentioned insurance policies were with INA, although that seems to be the inference.  Id. The court notes that the parties variably refer to the existence of a single policy and of multiple policies throughout their briefs.  However, it is unclear who precisely, between IYC, HPC, and Halmos, jointly or separately, were the insured under the policies.  The parties variably refer to IYC as seeking reimbursement here at times and, at other times, refer to various combinations of Halmos, IYC, and HPC.  Throughout this opinion, the court uses the term "Policy" to refer to any and all policies that may be held with INA and through which reimbursement is sought with respect to the Legacy and the Mongoose.  See INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued to Plaintiff, p. 4 (requesting discovery only "with respect to the S/Y LEGACY and/or the M/V MONGOOSE").
     In addition, INA is liable to certain requests for reimbursement with respect to Plaintiff's invoices that are covered under not only its Policy, but also that were agreed to regarding the negotiation of the NOAA settlement.  See, e.g., INA's Supplement to INA's Response to Complaint and Motion to Quash, Docket Entry No. 31, Ex. D, E-mail Communication Between the Parties, dated Oct. 29, 2009.  Throughout this opinion, the court's discussion of INA's coverage under the Policy encompasses any additional coverage agreement it made with regard to Plaintiff's negotiation of the NOAA agreement, as this appears to be the parties' intent as well.

[13]     Complaint and Motion to Quash, Docket Entry No. 1, Declaration of Easton, ¶ 3.

[14]     Complaint and Motion to Quash, Docket Entry No. 1, ¶ 6.

was submitted to INA.[15]  The sparsely-detailed list[16] prompted INA to request supporting documentation, including invoices for many of the vendors, including Plaintiff, so INA could determine whether the charges were reasonable, necessary, and covered under its Policy.[17]  The request for reimbursement for Plaintiff's legal services totaled more than $1,500,000.[18]

INA issued a subpoena to Plaintiff on June 23, 2009, to obtain documentation and information for determining whether the amounts charged by Plaintiff were reasonable, necessary, and covered under the Policy.[19]  Specifically, INA's subpoena requested:

> Any and all papers, notes, books, accounts, invoices, writings, drawings, graphs, charts, photographs, contracts, agreements, expert reports, articles, email, electronic or digital records, phone records, recordings (audio, video and digital), and all other information, data and data compilations prepared on behalf of, directed to or received from [Halmos], [IYC] and/or [HPC], their agents, employees and entities acting in a representative capacity with respect to the S/Y LEGACY and/or the M/V MONGOOSE including, but not limited to,

---

[15]    INA's Motion to Compel, Docket Entry No. 3, p. 3 and Ex. E, Preliminary Partial Listing of Legacy Salvage Charges, Expenses to Protect, Liability, Among Others, for Reimbursement.

[16]    Plaintiff states that the list was only a preliminary list of expenses prepared as an interim measure to provide INA with some information so that INA could know how much money was at issue and set its reserves accordingly. Plaintiff's Reply in Support of Its Motion to Quash, Docket Entry No. 7, pp. 3-4.

[17]    INA's Motion to Compel, Docket Entry No. 3, p. 4 and Ex. E, Preliminary Partial Listing of Legacy Salvage Charges, Expenses to Protect, Liability, Among Others, for Reimbursement.

[18]    Id.

[19]    INA's Motion to Compel, Docket Entry No. 3 and Ex. B, Subpoena Issued to Plaintiff.

those items set forth on attached Exhibit A-1.[20]
Exhibit A-1 listed, for the most part, various claims made by
Plaintiff for reimbursement by INA for "Legal and Legal Support
Services."[21]

In response to the subpoena, Plaintiff filed this action and
provided heavily redacted billing statements but no supporting
documentation to establish the amounts for which INA should
reimburse Plaintiff on behalf of its Clients.[22]   The billing
statements claimed reimbursement for only $984,911.52 for Plaintiff
from 2006 through mid-2009, approximately half a million less than
had been requested in the preliminary billing statements.[23]

At an August motion hearing, the court ordered Plaintiff to
produce "unredacted bills for every dollar that [Plaintiff is]
seeking from [INA]," but the court refused to order Plaintiff to
turn over any billing statements for which it was not seeking
reimbursement.[24]   Plaintiff timely complied,[25] and, in accordance

---

[20]    INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued
to Plaintiff, p. 4.

[21]    Id. at 5.

[22]    INA's Motion to Compel, Docket Entry No. 3 and Ex. D, Redacted Fee
Statements Provided by Plaintiff.

[23]    Compare INA's Supplement to INA's Motion to Compel, Docket Entry No.
31, Ex. M, Unredacted Billing Entries, with INA's Motion to Compel, Docket Entry
No. 3, p. 4 and Ex. E, Preliminary Partial Listing of Legacy Salvage Charges,
Expenses to Protect, Liability, Among Others, for Reimbursement.

[24]    Transcript, Motion Hearing, Aug. 20, 2009, Docket Entry No. 20, p.
16.

[25]    INA's Supplement to INA's Motion to Compel, Docket Entry No. 31, p.
3.

6

with the court's August 20, 2009, Order, INA, first on September 10, 2009, and again on October 8, 2009, responded with lists of requested supporting documentation correlated with various entries on the billing statements.[26]

Plaintiff produced some of the requested information on October 20, 2009, and INA made a follow-up request on October 29, 2009.[27]  On October 30, 2009, Plaintiff invoked the "clawback" provision of Federal Rule of Civil Procedure 26(b)(5)(B), which allows a party to assert a claim of privilege on information after that information has already been produced in discovery.  Plaintiff requested: "With respect to materials produced in response to the subpoena . . . [Plaintiff] request[s] the return of all materials, including invoices, as inadvertently produced."[28]

On November 6, 2009, the court held a status conference and allowed for additional briefing on the issue of privilege.[29]  Also at that time, the court ordered INA to sequester the produced

---

[26]    INA's Notification Regarding Requested Backup Documents, Docket Entry No. 22; Plaintiff's Response to INA's Notification Regarding Requested Back-up Documentation ("Plaintiff's Response to INA's Notification"), Docket Entry No. 25, p. 4.  Plaintiff characterizes INA's September 10th response as including "20 broad categories of Reimbursables that [INA] sought to contest . . . , but without much detail or explanation as to the good faith basis for questioning these entries."  Plaintiff's Response to INA Notification, Docket Entry No. 25, p. 2.

[27]    INA's Supplement to INA's Motion to Compel, Docket Entry No. 31, p. 9.  INA characterizes Plaintiff's October 20th production as "a miserly sheaf of documents."  Id. at 13.

[28]    Plaintiff's Emergency Motion to Compel Pursuant to Rule 26(b)(5)(B) ("Plaintiff's Motion to Compel"), Docket Entry No. 32, Ex. A, Communication from Plaintiff's Counsel to INA's Counsel, Oct. 30, 2009.

[29]    Transcript, Status Conference, Docket Entry No. 37, p. 9.

7

documents until such a time as the court made its final ruling on the issue of privilege.[30]

## II. __Motions to Quash and to Compel__

INA's motion to compel seeks unredacted billing statements and supporting documentation, because, according to INA, any privilege pertaining thereto has been waived by the Underlying Action against INA.[31]

In support of its motion to quash INA's subpoena, Plaintiff argues that: (1) the requested documents are protected from disclosure by the attorney-client privilege and work product doctrine; (2) the subpoena is vague and overly broad; (3) the subpoena is unduly burdensome; and (4) the subpoena failed to allow a reasonable amount of time to comply.[32]

The court must first decide whether Florida or Texas law applies to this subpoena which was issued in Texas but pertains to an underlying action filed in Florida. Second, the court must determine whether there are attorney-client or work product privileges and whether those privileges have been waived. Third, the court addresses whether the subpoena is overly broad and/or unduly burdensome and precisely what must be produced in response

---

[30]   Id. at 18.

[31]   INA's Motion to Compel, Docket Entry No. 3., p. 2.

[32]   Because the court is creating a new deadline by which Plaintiff must comply with the adjusted subpoena, Plaintiff's argument that the original subpoena failed to allow a reasonable time to comply is moot.

to the subpoena.  Fourth, the court addresses Plaintiff's motion under Federal Rule of Civil Procedure Rule 26(b)(5)(B).  Finally, the court addresses Plaintiff's confidentiality concerns.

## A.    Choice of Law

As Plaintiff has stated, "[t]he issue of choice of law is unusually complicated in this case."  The parties do not dispute that federal law governs the procedural aspects of this miscellaneous action concerning a subpoena issued under Federal Rule of Civil Procedure 45, because federal courts sitting in diversity apply the substantive law of the state providing the law of decision while following federal procedural law.  Bartley v. Euclid, Inc., 158 F.3d 261, 280 (5th Cir. 1998 (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996)).

As for the substantive law of the case regarding privilege, INA, in its briefs, emphasizes that this case should be decided under Florida law.[33]  However, INA also concedes that Texas and Florida formulations of the offensive use doctrine do not conflict, although Florida calls it the "at issue doctrine," and thus use of either state's law would result in the same outcome.[34]

---

[33]    See, e.g., INA's Motion to Compel, Docket Entry No. 3, p. 8 n.11; INA's Reply in Support of Its Motion to Compel, Docket Entry No. 10, p. 3.

[34]    INA's Reply in Support of Its Motion to Compel, Docket Entry No. 10, p. 4; Transcript, Status Conference, Docket Entry No. 37, p. 5; INA's Response to Plaintiff's Brief on Privilege, Docket Entry No. 40, p. 4.  Plaintiff has not taken a firm stand on which state's law should control the court's decision and has, accordingly, cited to a wide jurisdictional range of case law.  See, e.g., Plaintiff's Reply in Support of Its Motion to Quash, Docket Entry No. 7, p. 7 n.5 ("As this particular point relates to discussions between parties in the Underlying Action as opposed to the legal work done by Plaintiff in this action,

When the laws of two or more states may apply, the court must first determine whether those states' laws conflict with regard to the relevant issues.  See <u>Schneider Nat'l Transp. v. Ford Motor Co.</u>, 280 F.3d 532, 536 (5th Cir. 2002).  If the laws conflict, the court turns to the choice-of-law principles of the forum state. See <u>Cantu v. Jackson Nat. Life Ins. Co.</u>, 579 F.3d 434, 437 (5th Cir. 2009).  However, if the relevant doctrines do not conflict, the court need not undertake a choice-of-law analysis.  See <u>Kimberly-Clark Corp. v. Factory Mut. Ins. Co.</u>, 566 F.3d 541, 546 n.6 (5th Cir. 2009) (citing <u>Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.</u>, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis.")).  The law of the forum state then governs the action.  See <u>Schneider Nat'l Transp.</u>, 280 F.3d at 536.

Here, the parties do not dispute that the pertinent doctrines under Texas and Florida law applicable to this case are not in conflict.  Further, as discussed below, the court has not found any material conflict in the applicable laws of these states. Accordingly, the court need not engage in a choice-of-law analysis for purposes of this Order.  Because the laws of Texas and Florida do not conflict on the claims in this lawsuit, the court applies

Plaintiff cites Florida and South Carolina law.  Nevertheless, this is not an assertion or admission that either of those state's law controls the outcome with respect to legal work done by Texas lawyers in Texas.")

10

the substantive law of the forum state, Texas, to the pending motions.

**B.   Privileges**

   **1.   Attorney-Client and Work Product**

   Plaintiff claims that INA's requests violate the attorney-client privilege and the work product doctrine.[35]   The attorney-client privilege protects communications between an attorney and his or her client that are intended to be confidential.  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981).   "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  <u>Upjohn Co.</u>, 449 U.S. at 390.

   The attorney work product privilege, first announced by the Court in <u>Hickman v. Taylor</u>, 329 U.S. 495, 510 (1947), protects the written statements, private memoranda, and personal recollections prepared or formed by an attorney in the course of his or her legal duties.  <u>Upjohn Co.</u>, 449 U.S. at 399.   This has been incorporated into Federal Rule of Civil Procedure 26(b)(3)(B), which states that the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

   The work product rule protects materials prepared by a

---

   [35]   Complaint and Motion to Quash, Docket Entry No. 1, p. 4.

11

consultant in anticipation of litigation but not documents prepared
in the ordinary course of business. United States v. El Paso Co.,
682 F.2d 530, 542 (5th Cir. 1982).  Determining whether a document
is prepared in anticipation of litigation has been described as "a
slippery task" by the Fifth Circuit.  El Paso Co., 682 F.2d at 542.
The privilege protects more than documents generated in the course
of a lawsuit and has been extended to those documents generated for
the "primary motivating purpose" of aiding in possible future
litigation.  In re Kaiser Aluminum & Chemical Co., 214 F.3d 586,
593 (5th Cir. 2000). Factors to be considered in determining the
primary motivation for the creation of the document is whether
counsel has been retained, whether counsel directed the preparation
of the document, whether it was a routine practice of the party to
generate such document, and whether the document was prepared in
response to a particular circumstance.  Navigant Consulting, Inc.
v. Wilkinson, 220 F.R.D. 467, 477 (N.D. Tex. 2004).

As the party asserting privilege, Plaintiff bears the burden
of demonstrating privilege.  United States v. Rodriguez, 948 F.2d
914, 916 (5th Cir. 1991) (abrogated on other grounds by United
States v. Dixon, 509 U.S. 688 (1993)).  Here, however, INA does not
contend that the requested documents are not privileged, only that
the privilege has been waived as to INA.  Accordingly, the court
need not engage in a privilege analysis with regard to Plaintiff's
Clients.

INA's subpoena requests documents from all three of the plaintiffs in the Underlying Action.[36]  Plaintiff represents only IYC and HPC in the Underlying Action.[37]  Halmos, a pro se plaintiff in the Underlying Action, has submitted nothing to this court.[38] Further, there has been no allegation that Plaintiff represented Halmos in the NOAA settlement litigation.[39]  In fact, there are no allegations that Plaintiff has ever represented Halmos.  Therefore, no privilege attaches to any documents "prepared on behalf of, directed to or received from" Halmos, unless those documents were "prepared on behalf of, directed to or received from" Halmos in his official capacity as the president of IYC and HPC.[40]

Accordingly, it is **ORDERED** that Plaintiff turn over all documents requested in the subpoena with respect to Halmos that were not "prepared on behalf of, directed to or received from" him in his official capacity as president of IYC and/or HPC and that pertain to the Legacy and/or the Mongoose.[41]

---

[36]    INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued to Plaintiff, p. 4.

[37]    Complaint and Motion to Quash, Docket Entry No. 1, ¶ 7.

[38]    See id.

[39]    Complaint and Motion to Quash, Docket Entry No. 1, ¶ 6 and Declaration of Easton, ¶ 2.

[40]    INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued to Plaintiff, p. 4.

[41]    See id.  From the filings made with this court, it is difficult to ascertain whether, in fact, there would be any documents with respect to Halmos that are not in his official capacity as president of IYC and HPC and that also pertain to the Legacy and the Mongoose, per the terms of the subpoena.  See id. The subpoena, as written, however, insinuates that there may be, and to the

### 2.   Waiver of Privilege

INA argues that any right to claim that the requested documents are privileged has been waived.[42]  It bases this argument on three grounds: (1) Plaintiff's Clients waived the privilege since they filed suit for the full amount of Plaintiff's invoices and the supporting work at issue in the Underlying Action; (2) INA and Plaintiff's Clients shared a common interest in the underlying proceedings which prevented the privilege from applying; and (3) Plaintiff's Clients waived the privilege by producing redacted fee statements.  The court finds INA's first argument dispositive and rules on that ground.[43]

Generally, the offensive use doctrine states that a party seeking affirmative relief against another cannot maintain the action and at the same time utilize privileges to protect critical material from discovery.  <u>Tex. Dep't of Pub. Safety Officers Ass'n v. Denton</u>, 897 S.W.2d 757, 761 (Tex. 1995).  "A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action."  <u>Ginsberg v. Fifth Circuit Court of Appeals</u>,

_____

extent that there are, these must be turned over for lack of privilege.  <u>See</u> <u>id.</u>

[42]   <u>See, e.g.</u>, INA's Motion to Compel, Docket Entry No. 3, p. 8.

[43]   The court has already ruled on INA's third argument at an earlier motion hearing.  Transcript, Status Conference, Oct. 20, 2009, Docket Entry No. 29, p. 13 (stating, "If it's redacted it's not waived.").

14

686 S.W.2d 105, 108 (Tex. 1985).   Accordingly, privilege can be
waived by the offensive use of it.   Republic Ins. Co. v. Davis, 856
S.W.2d 158, 163 (Tex. 1993).

      The circumstances of In re Beirne, Maynard & Parsons, L.L.P.
are notably similar to the facts of the present proceeding.   260
S.W.3d 229 (Tex. App.—Texarkana 2008, orig. proceeding [mand.
denied]).   There, the law firm filed suit against its client's
insurance company to recover fees for which it had invoiced its
client.   Id. at 230-31.   The insurance company questioned the
veracity of the law firm's billing and, accordingly, sought
discovery of the underlying documentation to determine whether the
billing was accurate.   Id. Because the critical defensive issue in
the lawsuit was whether the billing records were accurate, and
because the law firm was putting its privilege to offensive use,
the court held that, under the offensive use doctrine, the firm
could not deny the insurance company the right to review the
documents supporting the firm's claim.   Id. at 231.

      In Fugro-McClelland Marine Geosciences, Inc. v. Steadfast
Insurance Company, the defendant/insurer contended that the
plaintiff/insured waived its privileges to the communications
between the insured and its defense counsel and among the insured's
representatives about the underlying action.   No. H-07-1731, 2008
WL 5273304, at *1 (S.D. Tex. Dec. 19, 2008) (unpublished).   The
insurer's reason for requesting the privileged documents was that

some "documents produced in discovery so far indicate that [the insured] was working against [the insurer] to make [the insurer] pay 100% of the defense costs for the [underlying action], even though both [the insurer] and [a second insurer] told [the insured] that the policies and Texas law required [the second insurer] to share in the defense." Id. at *4. The insurance company relied in part upon the offensive use doctrine. Id. at *4. After discussing Davis and Ginsberg, the court determined that the insurer had failed to show that any documents withheld by the insured were outcome determinative. Id. Even if the insurer's reason was true, the court held, it did not necessarily follow that the insured's withheld documents were outcome determinative on the same point. Id.

Unlike here, in Fugro there appears to have been no dispute as to coverage or reasonableness of the defense costs. The insurer was not disputing that the underlying action was covered under its policies, only that another insurance company was legally bound to share the costs. The dispute in the present case is more fundamental: whether all of Plaintiff's submitted defense costs are covered under the Policy.[44]

Three factors guide the court in determining whether an offensive use waiver has occurred: (1) whether the party asserting

---

[44]     INA's Response to Plaintiff's Reply Brief on Privilege, Docket Entry No. 42, p. 1.

the privilege is seeking affirmative relief; (2) whether the privileged information sought in all probability would be outcome determinative of the cause of action asserted; and (3) whether the party seeking disclosure has no other means of obtaining the evidence.  <u>Davis</u>, 856 S.W.2d at 163; <u>Transamerican Nat. Gas. Corp. v. Flores</u>, 870 S.W.2d 10, 11-12 (Tex. 1994).

INA's request satisfies all of these factors.  In support of the first factor, Plaintiff has asserted the privilege to this court and is seeking affirmative relief in the form of a motion to quash INA's subpoena.  Furthermore, in the Underlying Action, Plaintiff is seeking affirmative relief by attempting to recover reimbursable attorneys' fees from INA on behalf of its Clients.  In support of the second factor, this case was instigated so that Plaintiff's Clients could recover, among other costs, attorneys' fees that were expended to settle the Underlying Action. Production of documents by Plaintiff that would prove that the various statements on its billing statements were, in fact covered by the Policy is at the heart of the underlying dispute and, consequently, production of these documents would be outcome determinative.  In support of the third factor, Plaintiff has not suggested another way by which INA might obtain the evidence proving coverage under the Policy.  As the court has already stated, "[INA] can't get that information from [Plaintiff's Clients]. [Plaintiff's Clients have] no more idea what email

17

[Plaintiff] reviewed for a half an hour than [INA does].    So [Plaintiff] is the only source for this information."[45]

Florida case law is in accord with this determination.[46] "[F]or waiver to occur under the at issue doctrine, the proponent of a privilege must make a claim or raise a defense based upon the privileged matter and the proponent must necessarily use the privileged information in order to establish its claim or defense." Coates v. Akerman, Senterfitt & Eidson, P.A., 940 So.2d 504, 510 (Fla. 4th DCA 2006).   In Essex Builders Group, Inc. v. Amerisure Insurance Company, plaintiff Essex Builders Group, Inc. ("Essex") sought to recover attorneys' fees and costs against defendant Amerisure Insurance Company ("Amerisure").   No. 6:04-cv-1838-Orl-22JGG, 2007 WL 700851, at *1 (M.D. Fla. Mar. 1, 2007) (unpublished).   Essex had produced redacted billing statements, asserting that the redacted information was protected by attorney-client and/or work product privileges.[47]   Id.   Amerisure did not dispute that the records contained privileged information but argued that it should be permitted to review the unredacted billing records to determine whether it had a basis for contesting specific

---

[45]    Transcript, Status Conference, Nov. 6, 2009, Docket Entry No. 37, p. 8.

[46]    The parties have not provided and the court has not found any Florida Supreme Court decision that is on point.

[47]    Essex was attempting to submit to the court its unredacted billing statements and its fee agreement, both under seal, so that the court could determine the reasonableness of the charges by in camera review; the court rejected this approach to resolution.  Essex, 2007 WL 700851, at *1-2.

entries.[48]  Id.  The Essex court concluded that Essex had waived any privilege it might have with regard to the billing statements and fee agreement because Essex had placed the protected information "in issue through some affirmative act for [its] own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."  Id. (citing Cox v. Admin. U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994)).

Plaintiff states that Essex was wrongly decided but then only argues that the case is inapplicable to the issue of underlying documentation because the case only addressed unredacted billing statements.[49]  The court disagrees.  First, at least one underlying document (the fee agreement) was at issue in Essex.  Essex, 2007 WL 700851, at *1.  Second, Plaintiff cites to no Florida law contra the Essex opinion.  Third, the spirit of the Essex decision, that when a Plaintiff has placed protected information "in issue through some affirmative act for [its] own benefit, . . . to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party," is equally as applicable to underlying documentation as it is to billing statements.   Finally,  there  is  nothing  in  the  doctrine's

---

[48]     Although the privileged nature of the information was not contested, the Essex court, in dicta, expressed "some doubt" as to whether the records qualified for a privilege.  Essex, 2007 WL 700851, at *1, n.1.

[49]     Plaintiff's Brief on Privilege, Docket Entry No. 39, p. 14.

formulation in <u>Coates</u> by the Florida state court of appeals that undermines the <u>Essex</u> decision.    <u>See</u> <u>Coates</u>, 940 So.2d at 510 (discussing offensive use of "privileged information").

Accordingly, the court finds that the privileges surrounding the billing statements and underlying documentation have been waived as to those items for which Plaintiff's Clients seek reimbursement.

## C.    Production

Plaintiff argues that the subpoena is vague and overly broad.[50] The court agrees, because the subpoena as written covers a broad swath of material that is not relevant to the issue of coverage under INA's Policy.[51]    Having found that privilege as to both billing statements and supporting documentation has generally been waived for some of INA's requests, the court now turns to the specifics of which billing statements and what supporting documentation must be produced.

### 1.    Billing Statements

Many of the cases discussing this issue have concluded that

---

[50]    <u>See</u> Complaint and Motion to Quash, Docket Entry No. 1, p. 5.

[51]    <u>See</u> INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued to Plaintiff, p. 4 (requesting "[a]ny and all papers, notes, books, accounts, invoices, writings, drawings, graphs, charts, photographs, contracts, agreements, expert reports, articles, email, electronic or digital records, phone records, recordings (audio, video and digital), and all other information, date and date compilations prepared on behalf of, directed to or received from [Halmos], [IYC] and/or [HPC], their agents, employees and entities acting in a representative capacity with respect to the S/Y LEGACY and/or the M/V MONGOOSE"); <u>see also</u> INA's Response to Plaintiff's Reply Brief on Privilege, Docket Entry No. 42 (stating that the issue to be determined, and consequently the reason for seeking the documents, is to determine what to pay under the Policy).

unredacted billing records must be produced for an insurance company when the policyholder is seeking reimbursement. See, e.g., Ideal Electronic Sec. Co., Inc. v. Int'l Fidelity Ins. Co., 129 F.3d 143, 152 (D.C. Cir. 1997); Essex, 2007 WL 700851, at *1-2. For example, in Ideal, the court rejected partially redacted billing statements:

> As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. The reasonableness of any one entry on an attorney's billing statement is likely to be informed by other charges incurred for the same general service.

Ideal, 129 F.3d at 151. A district court in the Fifth Circuit also recently decided that, "[a]lthough the propriety of redaction of its billing records is at least doubtful," the court would allow a redacted version of the attorneys' billing records because only certain entries were relevant to the limited inquiry the court was asked to make. Vantage Trailers, Inc. v. Beall Corp., No. H-06-3008, 2008 WL 4093691, at *3, n.2 (S.D. Tex. Aug. 28, 2008) (unpublished).

This case and the accompanying discovery requests have been complicated because Plaintiff works on multiple matters for the insureds. Plaintiff's representation includes at least eleven matters in various lawsuits, some of which are related to the

Underlying Action.[52]  The current dispute does not pertain to all

of these lawsuits, and many of them do not involve INA in any way.[53]

INA has a very strong interest in determining that the billing

statements submitted to it actually pertain to Plaintiff's work on

matters covered by the Policy.

   Accordingly, it is **ORDERED** that Plaintiff must produce the

billing  statements  upon  which  its  Clients  are  requesting

reimbursement  in  relation  to  the  <u>Legacy</u>  and  the  <u>Mongoose</u>.[54]

Plaintiff may fully redact any entry for which reimbursement is not

being sought.  Plaintiff may not redact, even partially, any entry

for which reimbursement is being sought.[55]  Plaintiff must submit

---

[52]     Plaintiff states that it is demanding fees for two principle
categories of work done: (1) "fees incurred defending [its Clients] on third-
party claims, for example, in defending Halmos and IYC from claims from NOAA and
the State of Florida (for which INA had a duty to defend); and (2) "fees related
to  other  matters,  including  pursuit  of  the  claims  in  the  underlying  IYC
Litigation."  Complaint and Motion to Quash, Docket Entry No. 1, p. 5.  Although
Plaintiff does not specifically state that INA had a duty to pay for the work
performed in the second category, the fact that Plaintiff is demanding fees for
that  work  belies  INA's  assertion  that  Plaintiff's  complaint  "admits  that
[Plaintiff's] work encompasses matters allegedly covered under INA's policy as
well  as  matters  not  covered,  such  as  'pursuit  of  claims'  in  the  Florida
Litigation."  INA's Motion to Compel, Docket Entry No. 3, p. 5.
        Plaintiff has submitted to INA various redacted statements pertaining to
eleven  different  matters  upon  which  Pillsbury  worked  for  its  Clients.   INA's
Motion to Compel, Docket Entry No. 3, p. 4 and Ex. D, Redacted Fee Statements
Provided by Plaintiff.  Full payment has been requested for these matters,
although it is unclear whether they all fall under INA's coverage because of the
redaction.  INA's Motion to Compel, Docket Entry No. 3, pp. 4-5.

[53]     Plaintiff has stated that although there are many different matters
upon which it is working for the insured, there is more than one matter for which
its Clients are seeking reimbursement from INA.  Transcript, Status Conference,
Nov. 6, 2009, p. 6.

[54]     <u>See</u> INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena
Issued to Plaintiff, p. 4 (stating that the documents requested are only "with
respect to the S/Y LEGACY and/or the M/V MONGOOSE").

[55]     The court notes that this order is identical to the one regarding
billing statements that had previously been issued from the bench.   <u>See</u>
Transcript, Motion Hearing, Aug. 20, 2009, Docket Entry No. 20, p. 16 (stating
to INA: "[Y]ou are going to turn over unredacted bills for every dollar that you

to INA the billing statements as outlined above within thirty (30) days from the date this Order is issued.

### 2.    Supporting Documentation

Plaintiff resists the subpoena by arguing that the request is unduly burdensome because of the great volume of documentation that has been generated by the original action that led to the NOAA settlement.[56]   Under Federal Rule of Civil Procedure 26(b)(1), a district court may limit discovery if, among other things:

> it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . .

Here, the discovery sought by INA is neither cumulative, duplicative, or obtainable from another source; nor has INA had the opportunity to otherwise discovery the sought-after material. Furthermore, considering that a central point of contention in the Underlying Litigation revolves around proving how much Plaintiff's Clients are entitled to be reimbursed under the Policy, the burden and expense of the proposed discovery does not outweigh its likely benefit of substantially furthering the resolution of this case.

---

are seeking from the insurance company, but I'm not going to go as far to say that you have to turn over every bill which you are not seeking reimbursement for.  I don't think that [the privilege has] been waived on unrelated matters, only the matters that are at issue in this case which are: fees that you're seeking to be reimbursed.").

[56]    <u>See</u> Complaint and Motion to Quash, Docket Entry No. 1, pp. 6-7.

In addition, Plaintiff admitted that Plaintiff has been representing its Clients "on a variety of matters . . . probably . . . 15 matters" and that, were the NOAA matter and the insurance litigation the only matters the firm had with the Clients, the file request "would have been easy."[57]  The court will not find that document requests that "would have been easy" had it been the firm's only matter for a client become "unduly burdensome" when the firm's organization falters when providing client support on multiple matters.  Accordingly, the court does not find it unduly burdensome for Plaintiff to provide documents proving that its actions were covered under INA's Policy with the Clients.

Finally, one of Plaintiff's main arguments is that INA needs to trust Plaintiff's heavily redacted billing statements and need not obtain additional documentation at all.[58]  This position is undermined by the facts of this case, because Plaintiff has already given INA reason to mistrust the calculation of its defense fees.[59]  Plaintiff initially requested around $1.5 million from INA as its

---

[57]      Transcript, Motion Hearing, Aug. 20, 2009, Docket Entry No. 20, p. 9.

[58]      At the court's order, Plaintiff produced unredacted copies of the billing statements.  Shortly thereafter, Plaintiff attempted to use the clawback provision of Federal Rule of Civil Procedure 26(b)(5)(B) to retrieve the unredacted statements and all supporting documentation that had been produced up to that time.  Plaintiff's Motion to Compel, Docket Entry No. 32.

[59]      See INA's Motion to Compel, Docket Entry No. 3, p. 4 and Ex. E, Preliminary Partial Listing of Legacy Salvage Charges, Expenses to Protect, Liability, Among Others, for Reimbursement; INA's Supplement to INA's Motion to Compel, Docket Entry No. 31, Ex. M, Unredacted Billing Entries.

defense fees for the Underlying Action.[60]   When INA asked for
billing statements, the amount requested by Plaintiff dropped
significantly to $984,911.52.[61]   INA has agreed to pay $64,698.98
for reimbursable legal work in attorneys' fees based on information
Plaintiff has already provided.[62]   INA has also in good faith
already paid out around $500,000 for reimbursement for attorneys'
fees, having expected to later receive the supporting information.[63]
Plaintiff's Clients expect to be reimbursed under the Policy it has
with INA, and because Plaintiff has put insurance payments under
the Policy at issue in this case, Plaintiff cannot now decline to
provide documentation showing that the work was consistent with the
Policy and thus covered and reimbursable by INA.

　　Although the court has already determined that privilege as to
the billing statements and supporting documentation has been
waived, waiver of privilege must be narrowly construed.  See Davis,

---

[60]    INA's Motion to Compel, Docket Entry No. 3, p. 4 and Ex. E,
Preliminary Partial Listing of Legacy Salvage Charges, Expenses to Protect,
Liability, Among Others, for Reimbursement.

[61]    INA's Supplement to INA's Motion to Compel, Docket Entry No. 31, Ex.
M, Unredacted Billing Entries.

[62]    Id. Ex. D, E-mail Communication Between the Parties, dated Oct. 29,
2009.

[63]    See INA's Reply in Support of Its Motion to Compel, Docket Entry No.
10, p. 7; Plaintiff's Reply in Support of Its Motion to Quash, Docket Entry No.
7, Ex. E, Nov. 19, 2007, E-mail from Pamela Harting-Forkey to Peter Halmos.  This
payment was made "without benefit of the actual billings or detail", but the
check was "without prejudice" such that no one waived any "reservations, claims,
[or] defenses" against one another.  Plaintiff's Reply in Support of Its Motion
to Quash, Docket Entry No. 7, Ex. E, Nov. 19, 2007, E-mail from Pamela Harting-
Forkey to Peter Halmos.  See also Transcript, Motion Hearing, Aug. 20, 2009,
Docket Entry No. 20, p. 7 (confirming that the promised $500,000 was indeed paid
out for the Clients).  Later in the same hearing, INA said the amount was
$557,000.  Id. at 15.

856 S.W.2d at 163.  Therefore, the court finds that privilege has been waived only insofar as is required to prove that the work done by Plaintiff falls under the Policy its Clients have with INA. Accordingly, partial redaction of these documents is permissible.[64]

It is **ORDERED** that Plaintiff must produce supporting documentation for the billing entries for which reimbursement is being sought with respect to the <u>Legacy</u> and the <u>Mongoose</u>.[65] Plaintiff need not produce any documentation on any items that are not included in the unredacted billing entries.  As the parties have stated, the issue of coverage is for the Florida court to decide, but if Plaintiff expects reimbursement, then it must here produce the material upon which it relies to fall within the Policy, showing that the work accomplished was done for purposes of the portions of the Underlying Action that fall under INA's coverage.  It is further **ORDERED** that Plaintiff submit to INA the supporting documentation as outlined above within thirty (30) days from the date this Order is issued.[66]

---

[64]    Prior to the start of this litigation, when Halmos believed that, "Unless something unexpected comes over the transom . . . we're over the hump re NOAA/Florida legal fees," INA agreed that, "Certainly there may be items that may be considered attorney-client privileged [sic] and that need to be redacted; which [INA] fully understands; as Halmos and [INA] may be at odds."  Plaintiff's Reply in Support of Its Motion to Quash, Docket Entry No. 7, Ex. E, Nov. 19, 2007, E-mail from Pamela Harting-Forkey to Peter Halmos.

[65]    <u>See</u> INA's Motion to Compel, Docket Entry No. 3, Ex. B, Subpoena Issued to Plaintiff, p. 4 (stating that the documents requested are only "with respect to the S/Y LEGACY and/or the M/V MONGOOSE").

[66]    Alternatively, Plaintiff may decide to allow INA access to the original documents either on its premises or at another location within thirty (30) days from the date this Order is received.  The court suggests this only as one possible avenue of reducing Plaintiff's costs of production.  <u>See</u> Complaint

The court emphasizes that these supporting documents may be redacted, but the more the documents are redacted, the greater the risk Plaintiff runs of creating doubt as to whether those documents support the billing statements for which Plaintiff's Clients seek reimbursement.  Plaintiff and its Clients must decide how much, if any, to redact, and any redaction of material proving coverage may risk INA's refusal to cover the matching billing entries.  It is the insured's responsibility to provide information showing that the requested reimbursement falls under the policy.  See Federated Mut. Ins. Co. v. Grapevine Excavation Inc., 197 F.3d 720, 723 (5th Cir. 1999); Banco Nacional De Nicaragua v. Argonaut Ins. Co., 681 F.2d 1337, 1340 (11th Cir. 1982).  Because this is the insured's responsibility, and because the insured has made this request part of its action against INA, the privilege has been waived only insofar as is necessary to show that Plaintiff's work falls under INA's Policy.  INA's motion to compel is therefore **DENIED IN PART**, **GRANTED IN PART**, and Plaintiff's motion to quash is **DENIED IN PART**, **GRANTED IN PART**.

D.   **Motion to Compel Pursuant to Rule 26(b)(5)(B)**

On November 6, 2009, in response to Plaintiff's invocation of the "clawback" provision of Federal Rule of Civil Procedure 26(b)(5)(B), the court ordered INA to sequester the documents that

---

and Motion to Quash, Docket Entry No. 1, pp. 6-7 (arguing undue burden based on cost of production).

Plaintiff had already produced until such a time as the court made its ruling on the issue of privilege.[67]  Rule 26(b)(5)(B) provides, in part:

> If information is produced in discovery that is subject to a claim of privilege . . . the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return . . . the specified information and any copies it has and may not use or disclose the information until the claim is resolved.

The court has made its rulings on the documents that must be produced by Plaintiff.  If Plaintiff has produced documents that do not fall into these categories, then Plaintiff may "clawback" those specific documents.[68]

Accordingly, it is **ORDERED** that, within seven (7) days of this Order, Plaintiff must give INA a list consisting of any specific documents that it requests the return of because they do not fall into the categories of production which the court has ordered are subject to discovery.  It is further **ORDERED** that INA comply with Plaintiff's request within seven (7) days of receiving Plaintiff's list.

**E.   Confidentiality**

---

[67]   Transcript, Status Conference, Nov. 6, 2009, Docket Entry No. 37, p. 18.

[68]   The court notes that some of those documents may only partially be subject to the "clawback" provision in accord with this Order.  For example, Plaintiff may have produced a billing statement with some entries for which Plaintiff is not seeking reimbursement and some entries for which Plaintiff is. If such is the case, then INA must return the entire document and Plaintiff must return the properly redacted document within thirty (30) days of the issuance of this Order.

Finally, the court notes the concern of Plaintiff and its Clients regarding the confidentially of the documents from the original Florida litigation.  INA has agreed on the record that the documents received from Plaintiff can be made confidential between the parties.[69]  In fact, at the August motion hearing, Plaintiff's counsel requested a protective order as to the confidential status of the documents.[70]  INA's counsel agreed with this request stating that his Clients "absolutely do not have a problem with the confidentiality order."[71]  Plaintiff's counsel agreed to write and submit to the court a draft protective order on confidentiality.[72]  However, the court has not yet received a draft protective order from any party.  Accordingly, the court directs the parties to confer regarding an appropriate confidentiality agreement for the documents produced pursuant to this Order.  In the alternative, Plaintiff may yet submit to the court a draft protective order for the court to sign, but it must do so within fourteen (14) days of the issuance of this opinion.

### III. Conclusion

Based on the foregoing, the court **DENIES IN PART, GRANTS IN**

---

[69]     Transcript, Motion Hearing, Aug. 20, 2009, Docket Entry No. 20, p. 12; Transcript, Status Conference, Oct. 20, 2009, Docket Entry No. 29, p. 24.

[70]     Transcript, Motion Hearing, Aug. 20, 2009, Docket Entry No. 20, p. 24.

[71]     Id.

[72]     Id.

**PART** Plaintiff's Motion to Quash INA's Subpoena (Docket Entry No. 1); **DENIES IN PART, GRANTS IN PART** INA's Motion to Compel Production (Docket Entry No. 3); and **DENIES IN PART, GRANTS IN PART** Plaintiff's Motion to Compel Pursuant to Rule 26(b)(5)(B) (Docket Entry No. 32).

      **SIGNED** in Houston, Texas, this 6th day of January, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge

30